# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

YAROSLAV FARBER,

                                    CASE NO.:

      Plaintiff,

vs.

CITY OF HOLLYWOOD, FLORIDA, a Florida
municipal Corporation, and CARYL SHUHAM,
DOUGLAS GONZALES, and LUIS LOPEZ,
as individuals.

      Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, Yaroslav Farber, by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, hereby files this Complaint against the Defendants, City of Hollywood, Florida, and Caryl Shuham, Douglas Gonzales, and Luis Lopez, as individuals, and states as follows:

### JURISDICTION AND VENUE

1.      This is an action for deprivation under color of law of rights guaranteed by the United States Constitution pursuant to 42 U.S.C. § 1983.

2.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  Venue is proper under 28 U.S.C. § 1391(b).  The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

### THE PARTIES

3.      Plaintiff, Yaroslav Farber, ("Plaintiff") is owner of the property located at 1020 N. Northlake Drive, Hollywood, Florida 33019 (the "Property").

4.      The City of Hollywood, Florida (the "City") is a Defendant and is a municipal corporation and political subdivision of the State of Florida.

5.      Luis Lopez ("Lopez") is a Defendant and was the City Engineer at all relevant times herein.

6.      Douglas Gonzales ("Gonzales") is a Defendant and was City Attorney for the City at all relevant times herein. Gonzales was at all relevant times herein an attorney and member of the Florida Bar.

7.      Caryl Shuham ("Shuham") is a Defendant and was an elected City Commissioner at all relevant times herein.  Shuham was at all relevant times herein an attorney and member of the Florida Bar.

**INTRODUCTION**

8.      Plaintiff was targeted, singled-out and harassed extensively for nearly one year by the Defendants at the direction and behest of a private citizen, Jay Spechler ("Spechler"), who is an attorney and former Broward County judge.  Spechler is Plaintiff's neighbor and resides at 1026 N. Northlake Drive, Hollywood, Florida 33019.

9.      Beginning in January 2019, Spechler and Shuham led a crusade of sorts against the Plaintiff's modest 280 square foot dock and boat lift, located near the Intracoastal Waterway on North Lake in Hollywood, Florida.

10.     Spechler hated looking at Plaintiff's dock from his back yard and thought it was "overwhelming and unacceptable".  The Defendants were aware that this was his underlying concern.

11.     Shuham gave direction to staff that led to substantial City resources – and taxpayer dollars – being dedicated toward seeking the removal of Plaintiff's already-constructed dock, in order to appease Spechler.

12.     It was of no import to the Defendants that the City had previously issued a permit for the dock's construction or that many other nearby docks were very similar, if not larger, in size, configuration, and proximity to other nearby docks. The City did not have any legal basis to seek removal of Plaintiff's legally constructed dock, and this was privately acknowledged by City officials in e-mail communications.

13.     Ultimately, the City's attacks failed, but it succeeded at costing the Plaintiff thousands of dollars in attorney's fees and other costs in necessarily defending against them.  These attacks included declaring the City's permit as revoked without notice to Plaintiff and applying a City ordinance to Plaintiff's detriment although the ordinance was not applied to any other similarly situated person.  Such attacks intentionally infringed on Plaintiff's right to equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

14.     In addition to economic costs, Plaintiff suffered mental and emotional harm from the City's actions.  The Plaintiff now seeks to be made whole and brings this Complaint pursuant to 42 U.S.C. § 1983.

**GENERAL ALLEGATIONS**

15.     On December 11, 2017, the City issued a permit for the construction of a perpendicular dock and boat lift (collectively, the "Dock") located at the Property.  The Dock features a finger pier that extends approximately 22 feet waterward into North Lake in Hollywood,

Florida.  With the boat lift, the structure extends a total of approximately 37 feet waterward.  The total square footage over water is approximately 280 square feet.

16.     The Dock was a smaller redesign compared to the first design, which was originally submitted to the City in January 2017.  That initial design called for a longer finger pier with a boat lift on the side.  The finger pier would have extended waterward approximately 48 feet in length, much larger than the Dock that was built.  The City rejected this initial design due to the length of the finger pier, citing to a City ordinance that prevented docks over 22 feet in waterward length.

17.     The first design was approved by Broward County ("County") through issuance of an Environmental Resource General License ("General License") in January 2017.  The County determined that the first dock, larger in size, met all requirements of the County's code of ordinances.

18.     Plaintiff's general contractor, Morrison Contractors Inc., neglected to apply for a new General License for the redesigned Dock.  Nevertheless, the City issued a permit for the Dock and its construction was completed in accordance with that permit by April 2018.

19.     The City approved the Dock's construction on a final inspection in May 2018 and the permit was thereafter closed by the City.

20.     On December 12, 2018, the Plaintiff's neighbor, Spechler, wrote an email to City Commissioner Shuham complaining that the Dock "is unbelievably overwhelming and unacceptable".

21.     Shuham responded the next day and suggested a meeting for a "site visit".

22.     Thereafter, various City officials, led by Spechler and Shuham, actively sought removal of the Dock and took official actions intended to accomplish this goal.  City Attorney

Gonzales at one point brazenly described this matter as a "number one priority", signifying the waste of taxpayer dollars deployed to such an innocuous matter.

23.     Shuham, as an elected official, did not have authority, discretionary or otherwise, to directly order City administrative staff to carry out tasks, as it is expressly prohibited by the City's Charter.

24.     In 2019, at least six meetings (likely much more) were held between Spechler, Shuham, Lopez, Gonzales and others to discuss removal of the Dock.  The Plaintiff was not informed of or invited to any of these meetings.

25.     Eventually, a path forward was settled upon by the group.  They agreed to revoke the City's permit issued for the Dock and to work to prevent the Plaintiff from getting an updated General License from the County for the Dock.

26.     As Gonzales had phrased it in an email to Shuham dated April 18 regarding the Dock, "please do not think that I am not doing my part as we all agreed to *the next step*." [emphasis added]

27.     That same day, the Defendants' plan had commenced.  The City Engineer, Luis Lopez, sent a letter to the Plaintiff.  It was signed by Lopez as City Engineer and indicated that the permit was "incompliant" because "U.S. Army Corps of Engineer permit [was] not submitted/provided" [1]  and the "Broward County Environmental Resource License on file is not consistent with boat dock layout constructed".

28.     On the same day, the City inexplicably declared the status of the permit "expired".

29.     On April 24, 2019, Spechler wrote an email to Linda Sunderland with the County's Environmental Protection and Growth Management Department, sharing the April 18 letter sent

---

[1] The Army Corps issue is not addressed in this Complaint because the City was mistaken, as adequate approval was obtained from the Army Corps and this was in fact provided to the City.

by the City and falsely claiming that the Dock "completely blocks navigational rights/access to the neighbor to the east and severely impedes navigational rights to my property to the west".  This statement was knowingly, objectively and verifiably false.

30.     City officials, including Lopez, Shuham and Gonzales, knew that Spechler's underlying concern was the appearance of the Dock.  The navigation issue was a made-up ploy intended to get the County to deny the General License.

31.     On May 28, 2019, Plaintiff's contractor made an after-the-fact application for a General License for the Dock.  The County ordinances does not provide for any penalties or difference in treatment for such after-the-fact applications.

32.     The City was prepared to say and do anything to undermine the Plaintiff's General License application, with the goal of eventually removing the Dock.

33.      On May 28, 2019, Shuham sent an email to Lopez asking, "What are the City's next steps towards having this dock removed?"

34.     On June 27, Shuham emailed Lopez and others stating "we need staff to reach out to Linda Sunderland ASAP to clearly let her know the City strongly objects to the current installation and that the dock was installed in violation of the permitted [sic] process and the navigable waters requirements."  In another email she sent on the same day, Shuham stated that the "City needs to be extremely clear that THEY know it impedes navigation for the neighbors."

35.     In another e-mail that day, Shuham wrote "the neighbors and the City should be given the opportunity to demonstrate to the County why this application should be denied.  The City should make it clear that we reject this structure."

36.     On the same day, an attorney with Broward County, Michael Owens, ("Owens") sent an email to City Attorney Gonzales inquiring whether the City considers the Dock "to be in

violation of the City's Code or permit".  Owens told Gonzales that, according to the County's Code, the General License could be denied by the County if it was determined that the dock violated City ordinances.  The County generally defers to Cities' interpretations of their own code of ordinances in making this determination.

37.     On July 2, 2019, Shuham acknowledged in an email to Spechler and City officials that "the County's primary criteria is whether the dock violates the City ordinances".

38.     Knowing that the County would focus on whether the Dock violates the City's ordinances, City officials, led by Shuham, were looking for an ordinance on which to base its objection.  They evidently settled on Section 98.006(A)[2].

39.     On July 1, 2019, City Attorney Gonzales sent an email to the Linda Sunderland with the County, in which he expressed on behalf of the City a formal objection to the Dock based on Section 98.006(A). This section makes it unlawful to dock "a vessel in a manner which shall constitute a navigational hazard or interfere with another vessel."

40.     Gonzales privately admitted to Shuham, Lopez and others in an e-mail on June 27 that "it does not appear that the City has any regulations specifically prohibiting the dock that was constructed."  Gonzales knew that Section 98.006(A) could not fairly be applied to the Plaintiff. He added that "I am very concerned that we simply do not have a code requirement that the current dock violates and that could be used by the County as justification for denial."

41.     Clarissa Ip, a City engineering employee, sent an e-mail to Lopez and others stating, "Although it is the City's intent to revise the Code, it does not give the County sufficient evidence at this time to deny the permit...City Code do have a section regarding navigability...however, it

---

[2] The City Attorney also referenced a section of the City's Code dealing with permitting to support an assertion that the dock was not built as permitted by the City, which is a false statement.  The County knew it was false and so it is not discussed at length here.

once again does not provide sufficient verbiage to deny permit."  This e-mail was forwarded to Gonzales as well, and Gonzales forwarded this e-mail to Shuham.

42.     Thus, the Defendants knew well that the City's ordinances were not offended by the Dock but knowingly misled the County otherwise to accomplish Spechler's goal of Dock removal.

43.     By this time, Shuham, Lopez and Gonzales knew or should have known that there was no navigational hazard whatsoever that was created by the Dock.  On June 27, Clarissa Ip created an aerial mark-up showing the distances between the Dock and neighboring docks, which made it abundantly clear that there was no navigational impediment.  This aerial was sent to Lopez and Gonzales, and Gonzales also forwarded it to Shuham.

44.     Shuham understood what she was doing.   She sent a cell phone text message to Spechler acknowledging that "Staff seems worried they don't have sufficient reason to deny" the General License.

45.     On July 10, 2019, City Attorney Gonzales spoke on the telephone with Sunderland, who apparently informed him that the County would probably not deny the General License unless the City also revokes its permit, as the approvals would be inconsistent.  Gonzales shared this information with Lopez and Shuham and had the impression that revoking the City's permit "may be the only way the County will consider denial at this point."

46.     Soon thereafter, on the same day, Lopez wrote an email to Sunderland expressing formal objection to the Dock on behalf of the City due to navigational concerns in violation of Section 98.006(A) and the "totality of the information provided".  Lopez further advised that the City "will be revoking its Dock permit at 1020 North Northlake."  Gonzales added in a follow up

email to Sunderland "I have been advised that the City does in fact intend to rescind the permit it issued for the perpendicular dock."

47.     The e-mail from Lopez was critical because he has the authority and responsibility for issuing dock permits under the City's Code of Ordinances, Section 98.029(B).

48.     That same day, Shuham left a voicemail on Spechler's cell phone which Spechler described in a follow up e-mail as "wonderful news".

49.     The City willfully spread misinformation to the County in hopes of getting the County to deny the General License application.  Such misinformation included the false allegation that the City did not permit the structure as built.  The City did in fact issue a permit for the Dock exactly as built and the City soon backed off this assertion when Gonzales was called out for the misrepresentation by Sunderland.

50.     The City, through official acts, applied Section 98.006(A) to Plaintiff's detriment and decided to revoke the City's permit without notice to Plaintiff or opportunity to be heard. Plaintiff only found out about the misrepresentations to the County after receiving long delayed responses to its public records requests in late August 2019.

51.     At no time during the above events did the City or any officials involved contact the Plaintiff to advise of its official acts against him.

52.     On the same day, July 10, the County sent email correspondence to the Plaintiff's contractor indicating that the County has received objections to the General License application and advised that the City is claiming that the Dock violates Section 98.006(A) and 98.029[3].  The email requested a response by July 19, 2019 and seemed to hint at a probable denial by the County.

---

[3] The reference to 98.029 in the email incorrectly asserted a boat ownership issue, which the City itself had not raised.

53.     At this point, Plaintiff determined that it was reasonably necessary to hire legal counsel and obtain expert witness opinions to defend against the objections.  The City, through Gonzales and Lopez, had treated Plaintiff differently than others similarly situated, applying a clearly inapplicable ordinance as a basis to revoke its permit and express formal objections to the County General License application.   It was necessary for legal counsel to assist with a comprehensive response.

54.     Plaintiff thereafter retained legal counsel, who contacted Gonzales and began gathering information through public records requests.  A formal response was prepared and provided to the County by Plaintiff's legal counsel on August 8, 2019.  Plaintiff hired experts to contest the navigation issue, which was objectively and verifiably false. Due to a delayed public records response from the City, Plaintiff's counsel provided a supplemental response to the County on August 23, 2019 that addressed critical new information learned.  The supplemental response also shared with the County copies of the City's emails where City officials privately acknowledged the Dock was consistent with the City's code of ordinances.

55.     Meanwhile, as the County was considering the objections and responses from Plaintiff's counsel, Spechler regularly communicated with Gonzales and Shuham.

56.     On July 29, 2019, Spechler wrote a cell phone text message to Shuham, stating "[Lopez] says the City will revoke the dock permit.  We need it to happen.  Let Farber, not his neighbors, fight it.  It's exhausting."  Shuham responded with a thumbs up.

57.     On August 2, 2019, Spechler wrote again to Shuham in a text message, "we need to be sure Staff follows through with their promise of revoking the dock permit immediately after County decision, regardless of County decision."  Again, Shuham responded with a thumbs up.

58.     On August 14, 2019, Shuham wrote to Shiv Newaldass, the City's Development Services Director, explaining that it remains her intention to "revoke the permit and direct the resident to remove the dock."

59.     On August 27, 2019, Gonzales wrote an email to Spechler, stating "Good morning Judge.  I just wanted to inform you that counsel for Mr. Farber made a few requests, all of which have been responded to by the City.  Hope your day is going well."

60.     The County's consideration of General Licenses normally is supposed to be completed within 10 days according to the County Code.  It took more than 4 months for the County to reach a decision here because of the City's involvement and objections to the Dock.

61.     The County eventually issued the General License on September 10, 2019 over the City's objections.  Still, the City did not give up.

62.     On September 17, 2019, Plaintiff's legal counsel sent a demand letter to Gonzales' attention making formal demand for closure of the permit that had been deemed expired months earlier.

63.     On September 24 and 25, 2019, Spechler met in person with Shuham, Gonzales and Lopez, among others.  Thereafter, on September 26, Gonzales wrote to Plaintiff's counsel indicating that "in a meeting yesterday afternoon, there came to my attention additional issues concerning the dock and vessel at the property.  Therefore, the City is not closing its file at this time."

64.     Plaintiff's counsel later learned through a public records response from the County that Gonzales, on behalf of the City and with all City Commissioners copied, sent a lengthy email to Sunderland, dated September 25, 2019, which requested the County to revoke the General License due to alleged violation of General License conditions.  As this email was sent after the

10-day appeal period, the County did not take action; however, the e-mail shows that the entire City Commission was aware of and consented to City's position on seeking removal of the Dock.

65.    On October 26, 2019, Plaintiff directly informed the City Commission of the official acts taken against him by sending a comprehensive letter with most of the same factual statements set forth in this Complaint, which was dated October 26, 2019.  Plaintiff never received a response.  Further, the City's permit was not closed until December 17, 2019, after a second demand letter was sent by Plaintiff's counsel.

66.    All throughout this process, Plaintiff experienced continuous anxiety and mental anguish over the prospect that his Dock could be removed after having spent over $50,000 on its construction.  He was overcome with worry that the continuing conflict with the City, led by Spechler and Shuham, had no end in sight.

67.    Plaintiff spent tens of thousands of dollars on attorney's fees and other costs, including expert fees, in fighting with the City to close the permit and get the General License from the County.

**Similarly situated persons**

68.    The City has not applied Section 98.006(A) to other highly similar docks in the area, even though the ordinance existed in the same form at the time the other docks were approved.  Navigational concerns were never raised by the City for those other docks and the ordinance has not been used in any way to negatively impact such docks or the permits issued for their construction.

69.    The following nearby docks are similar to the Dock in all material aspects, including size, configuration, and proximity to neighboring docks:

a. 1120 S. Northlake Dr., Hollywood, FL 33019.  Large perpendicular dock and boat lift approved on final inspection by City on 6/27/2019

b. 949 S. Northlake Dr., Hollywood, FL 33019.  Large perpendicular dock and boat lift approved on final inspection by City on 11/3/2009.

c. 1038 S. Southlake Dr., Hollywood, FL 33019.  Large perpendicular dock and boat lift approved on final inspection by City on 12/15/2014.

d. 1051 Harbor Ct., Hollywood, FL 33019.  Large perpendicular dock and boat lift approved on final inspection by City on 12/7/2011.

e. 928 N Northlake Dr., Hollywood, FL 33019.  Large dock and boat lift approved on final inspection by City on 11/6/2018.

f. 1101 S. Southlake Dr, Hollywood, FL 33019.  Large perpendicular dock and boat, permitted in 2003.

70.     Lopez and Shuham were well aware of at least two of the above docks – 1101 S Southlake Dr and 949 S Northlake Dr – as confirmed by an e-mail communication in February 2019.  In the e-mail, Lopez stated "We have found permits for two other locations [where] perpendicular docks were permitted."  The aerial screen shots attached to the email show that said docks are similar to the Dock in all material respects.  This information did not stop the City from treating Plaintiff different than any other similarly situated property owner.

71.     The City never relied upon Section 98.006(A) to prevent the construction of the above docks due to navigational concerns.  Yet, here the City attempted to force removal of an already built dock no different that the above docks in all material respects.

## COUNT I
## EQUAL PROTECTION; 42 U.S.C. § 1983
## *AGAINST* CITY OF HOLLYWOOD, FLORIDA

72.     The allegations in paragraphs 1 through 71 are incorporated herein by reference.

73.     This is a "class of one" claim pursuant to 42 U.S.C. § 1983, for violation of the Equal Protection Clause of the Fourteenth Amendment of the United Stated Constitution against the City of Hollywood, Florida.

74.     The City intentionally treated Plaintiff differently compared to others similarly situated and there was no rational basis for the difference in treatment.  *See Griffin Indis. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007).

75.     Lopez, as City Engineer, had final policymaking authority to issue the City's permit for the Dock under the City's Code of Ordinances, Section 98.029(B).

76.     The City Attorney and staff acknowledged in internal email communications that the Dock does not violate City Code.  Nevertheless, contradicting internal communications, by July 12, 2019, both Gonzales and Lopez had written emails expressing formal objections on the City's behalf to the County misrepresenting that the Dock was a navigational hazard in violation of Section 98.006(A) of the City's Code.  It was further represented to the County that the City's permit would be revoked.  There was no meaningful opportunity for Plaintiff to seek review of these objections by the City, which expressed formal policy positions of the City on applicability of its ordinances.  Lopez knew that the County's primary criteria for consideration of the General License application was whether the Dock violates the City's ordinances.

77.     Through the formal objections asserted to the General License application based on Section 98.006(A) and decision to revoke the City's permit, the City had selectively enforced a

facially neural ordinance, and intentionally treated Plaintiff differently than any other similarly situated person.

78.     The City has not applied section 98.006(A) to prevent the construction of any other dock, let alone other very similar docks in the nearby area.

79.     Through Lopez and Gonzales, the official policy of the City was that the Dock should be removed due to the alleged violation of Section 98.006(A).

80.     The City, through its official policy adopted by Lopez, selectively enforced its code against the Plaintiff with discriminatory purpose, as the Dock did not differ in any material respect compared to other perpendicular docks on North Lake.  This was done only to appease an influential neighbor and former judge, Jay Spechler, who was pushing the City to seek removal of the dock and had the ardent support of Shuham.

81.     Immediately following written objections from Gonzales and Lopez on the same day, the County requested a written response from the Plaintiff.  It then became reasonably necessary for Plaintiff to hire an attorney to defend against the City's objections.  Substantial time, effort and financial resources were expended by Plaintiff to convince the County that the City's position was without merit.

82.     The City's objections proximately caused delay in the County application process. The County eventually issued the license on September 10, 2019, but the damage had been done because substantial sums had been spent by Plaintiff to obtain a General License for the Dock which was no different in size, configuration and footprint compared to many others in the surrounding area.

83.     The City selectively applied a facially neutral ordinance, Section 98.006(A), which it had not enforced or applied against any other persons similarly situated in all relevant respects.

The City treated Plaintiff differently than others similarly situated by applying Section 98.006(A) to the Dock and by deciding to revoke the City's permit.

84.     The City did not deny a permit based on Section 98.006(A) for any other similarly situated person on North Lake or other nearby areas even though there are nearby docks that are *prima facie* identical in all material respects.  There was no rational basis for the difference in treatment, which was wholly arbitrary.

85.     None of the other similar docks in the area had distinguishing features which an objectively reasonable government decisionmaker would view as relevant in determining whether to apply Section 98.006(A) due to concerns regarding navigational obstruction.

86.     The only distinction that mattered was that an influential neighbor and former judge objected strenuously to the dock based on his personal dissatisfaction with its perceived size and impacts to his backyard view.  The City obliged and did everything it could to have the Dock removed based on a disingenuous navigation argument.

87.     The City's unequal treatment of Plaintiff is further evident in the fact that the City treated Plaintiff completely different before Spechler got involved.  The City had previously issued its permit for the Dock and it was built in accordance with said permit.  The City approved the construction after final inspection and closed the permit in around May 2018, nearly one year before suddenly declaring it expired in April 2019.

88.     The official objections submitted and approved of by Lopez as final policy maker constitute an official policy of the City of Hollywood.  *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978).  The decision to revoke the permit for the Dock was also an official policy of the City because it was agreed to by Lopez as final policy maker without any meaningful opportunity for review before it was expressed to the County.  Lopez' acts or

edicts regarding dock permits "may fairly be said to represent official policy" of the City.   *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).  Lopez made a deliberate choice to follow a course of action – deciding to revoke the permit and determining that the Dock violates a City ordinance - among various alternatives that were available.

89.     Lopez and Gonzales acted under color of law.

90.     Further, the entire City Commission, as the City's governing body, was aware of and consented to the City's policy of objecting to the Dock and seeking its removal.  As of September 25, 2019, all City Commissioners were aware of the City Attorney's continuing efforts to remove the Dock but failed to stop such efforts.  Again, the City Commissioners received correspondence from the Plaintiff dated October 26 stating all of the pertinent allegations in this Complaint, but they failed to respond.

91.     The City, through a policy adopted by its final policy maker, intentionally and unequally enforced a facially neutral ordinance against Plaintiff and intentionally treated him different than others similarly situated in all relevant respects.  The difference in treatment was irrational and wholly arbitrary.  This violated Plaintiff's constitutional right to equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution as a 'class of one'.

92.     The actions taken by the City against the Plaintiff were carefully and specifically chosen because of their adverse effects upon the Plaintiff, with the goal of bringing about removal of the Dock to appease a private citizen, Spechler.

93.     The deprivation of Plaintiff's constitutional right to equal protection under law was the result of an official policy or custom of the City.

94.     The City's violation of Plaintiff's constitutional right to equal protection as a "class of one" proximately caused the Plaintiff to suffer economic damages including attorney's fees, expert fees and other costs that were reasonably necessary to defend against the City's actions, and noneconomic damages for mental and emotional harm to Plaintiff including inconvenience, humiliation and mental anguish.

95.     Although the County eventually issued the General License over the City's objection and the City eventually reinstated and closed its permit, Plaintiff has suffered damages for which he is entitled to compensation.

96.     Plaintiff has hired the undersigned attorneys to represent him in this action and has agreed to a reasonable attorney's fee for said representation, and therefore, is entitled to attorney's fees pursuant to 42 U.S.C. § 1988.   Plaintiff is further entitled to costs as authorized by applicable law, including 28 U.S.C. § 1920.

**COUNT II**
**EQUAL PROTECTION; 42 U.S.C. § 1983**
***AGAINST* LUIS LOPEZ**

97.     The allegations in paragraphs 1 through 96 are incorporated herein by reference.

98.     This is a "class of one" claim for deprivation of Plaintiff's right to equal protection under law guaranteed by the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983, as against Lopez in his individual capacity.

99.     Lopez, who has authority to issue dock permits under the City's Code, intentionally treated the Plaintiff differently than others similarly situated without a rational basis when he formally objected to the General License application based on Section 98.006(A) and made the decision to revoke the City's permit.   Lopez willfully carried out the wishes of Spechler and Shuham for the purpose of adversely impacting Plaintiff and causing eventual removal of the

Dock.  He knew that he was treating Plaintiff differently than others similarly situated in all relevant respects.

100.    Lopez' decision to apply Section 98.006(A) to Plaintiff and not to others similarly situated was entirely without a rational basis, as there were no relevant differences between the Dock and similarly situated docks that would cause an objective government decision maker to treat the Plaintiff differently.

101.    An earlier email from Lopez to Shuham shows that he was aware of other docks similar in size and configuration, and Lopez knew that he was selectively enforcing the ordinance, and used his official position under color of law to deprive Plaintiff of his constitutional right to equal protection under law.

102.    Lopez was also aware that the ordinance did not apply by its express wording, but he applied it anyway with the goal of eventually removing the Dock.

103.    Lopez' decision to revoke the City's permit for the Dock was also calculated to intentionally treat Plaintiff different than similarly situated persons without any rational basis.

104.    Plaintiff's right as a "class of one" to equal protection under the law, and the proscription against intentional and purposeful infringement of that right, was clearly established at the time of the violation, and a reasonable official in Lopez' position would have understood that what he did violates this right.  *Willowbrook v. Olech*, 528 U.S. 562 (2000); *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392; *See also Log Creek, LLC v. Kessler*, 717 F.Supp. 2d 1239 (N.D. Fla. 2010).  Stated differently, the Plaintiff had a clearly established right to be "secured …against intentional and arbitrary discrimination…occasioned by [an ordinance's] improper execution by duly constituted agents."  *Olech*, 528 U.S. at 564.

## COUNT III; 42 U.S.C. § 1983
## CONSPIRACY AGAINST RIGHTS
### *AGAINST* SHUHAM, GONZALES AND LOPEZ

105.     The allegations in paragraphs 1 through 104 are incorporated herein by reference.

106.     This is a claim for conspiracy against rights pursuant to 42 U.S.C. § 1983 against Shuham, Gonzales and Lopez in their respective individual capacities.  *See Grider v. City of Auburn*, 618 F. 3d 1240 (11th Cir. 2010).

107.     Shuham, Gonzales, Lopez and Spechler ("Co-Conspirators") conspired to violate plaintiff's constitutional right to equal protection under the law as a "class of one".

108.     The Co-Conspirators regularly met in person to discuss how to remove the Dock. They communicated frequently by e-mail to discuss the steps toward accomplishing this goal.  The first step they agreed upon was to ensure that the County would deny the General License for the Dock.

109.     E-mail communications between the above individuals make it clear that the Co-Conspirators reached an understanding to deny Plaintiff his constitutional right to equal protection by knowingly treating Plaintiff differently than other similarly situated persons.

110.     Gonzales earlier had stated in an email to Shuham on April 18, 2019 regarding the Dock that "we all agreed to the next step."

111.     Shuham emailed Lopez on May 24, 2019 stating, "What are the City's next steps towards having this dock removed?"

112.     Shuham then wrote an email to Lopez and Gonzales on June 27 imploring that the "City should make it clear that we reject this structure."

113.    That same day, Gonzales sent an email to Shuham stating, regarding the County's consideration of the General License application, "I cannot guarantee that they will accede to my request but will do whatever I can."

114.    A plan was clearly formed between the above Co-Conspirators to treat the Plaintiff differently than other similarly situated persons by using any means to get the County to deny the General License, to revoke the City's permit, and to seek removal of the Dock.

115.    The Co-Conspirators agreed to rely on Section 98.006(A) to justify a decision by the County denying the General License application, even though Gonzales and others admitted privately that the ordinance did not apply to the Plaintiff.

116.    On July 1, 2019, Gonzales wrote an objection to Sunderland, who was in charge of making a decision on the County General License application and asserted that the dock violates the City's ordinance, Section 98.006(A).

117.    The Co-Conspirators knowingly and willfully sought to use an ordinance against Plaintiff even though it knew there were no legitimate grounds for doing so.  Gonzales privately acknowledged to the other Co-Conspirators that the ordinance does not apply to Plaintiff.

118.    Lopez was the only one of the Co-Conspirators who was acting within the course and scope of the duties of his employment, pursuant to Section 98.029 of the City's Code of Ordinances.  The other Co-Conspirators who were affiliated with the City – Shuham (City Commissioner) and Gonzales (City Attorney) – were acting outside the course and scope of their duties and/or authority.  Spechler was a private citizen and was actively involved in the conspiracy.

119.    Gonzales and Shuham actively pursued Lopez' participation in the plan to remove the Dock since it directly related to his official duties.  This was evident in a July 10 email from

Gonzales to Lopez regarding sending an objection to the County, stating "Please be sure to attend to this matter as soon as possible….this needs to be a number one priority."

120.    That day, Gonzales told Lopez in an email that, based on his conversation with the County representatives, the City's permit would need to be rescinded for the County to "Consider denial at this point."  Within an hour, Lopez wrote a formal objection to the County stating that the dock violated Section 98.006(A) and that the City's permit would be revoked.

121.    The Co-Conspirators knew that the County's primary criteria for the General License application was whether the Dock violated the City's Code of Ordinances.  As such, Section 98.006(A) was unequally applied with discriminatory purpose against the Plaintiff, and it was not applied against other similarly situated docks.

122.    The Co-Conspirators intentionally treated Plaintiff differently that other persons similarly situated, and there was no rational basis for the difference in treatment.

123.    The Co-Conspirators acted maliciously and wantonly in violating the Plaintiff's constitutional right to equal protection.  Each Co-Conspirator acted with reckless and callous indifference to the Plaintiff's federally protected right to equal protection.  The Co-Conspirators' reckless and callous indifference toward Plaintiff's constitutional rights is particularly evident in that they all had actual knowledge that the ordinance was being unfairly applied to the Plaintiff, shown by written acknowledgement in private that the ordinance's terms did not apply.  Further, they knew of other similar docks that were treated differently, yet proceeded anyway against the Plaintiff.

124.    The conspiracy was complete because the Co-Conspirators reached an understanding to deny the Plaintiff his right to equal protection under the law, and overt acts were committed to carry out that conspiracy by applying an ordinance unequally to the Plaintiff,

expressing formal objections that were critical to consideration of the General License application, and revoking the City's permit for the Dock.

125.     As stated, the equal protection right infringed by the conspirators was clearly established at the time of infringement, and a reasonable City official would have known that the alleged actions infringed on said right.  This is especially true for Gonzales and Shuham who are both attorneys and members of the Florida Bar.

WHEREFORE, Plaintiff demands judgment be entered against the Defendant, City of Hollywood, Florida, and Defendants, Caryl Shuham, Douglas Gonzales and Luis Lopez, as individuals, in favor of Plaintiff, and awarding the following:

a)   Judgment finding that the City of Hollywood, Florida violated Plaintiff's constitutional right to equal protection under law guaranteed by the Fourteenth Amendment of the United States Constitution;

b)   Judgment finding that the individuals Luiz Lopez, Douglas Gonzales and Caryl Shuham violated Plaintiff's right to equal protection in their individual capacities;

c)   Awarding compensatory damages in favor of Plaintiff and against the Defendants in an amount determined by a jury;

d)   Awarding punitive damages in favor of Plaintiff and against Defendants Luiz Lopez, Douglas Gonzales and Caryl Shuham in their individual capacities;

e)   Awarding prejudgment interest, attorney's fees and costs as authorized by applicable law; and

f)   Grant such further relief as the court determines just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: 4/13/2020

s/Rainier Regueiro                                        

Rainier Regueiro, Esq.

Florida Bar Number: 115578

rregueiro@rgpattorneys.com

**REMER & GEORGES-PIERRE, PLLC**

319 Clematis Street, Suite 606

West Palm Beach, FL 33401

Telephone: (561) 225-1970

Facsimile: (305) 416-5005

s/ Ryan A. Abrams

Ryan A. Abrams

**Abrams Law Firm, P.A**

888 SE 3rd Ave., Suite 400

Fort Lauderdale, FL 33316

Fla. Bar. No. 111323

(954) 332-2358

rabrams@abrams-law.com